1
2
3
4

UNITED STATES DISTRICT COURT

5

DISTRICT OF NEVADA

6

* * *

7   RUTH ANN STEDEFORD,                                      Case No. 2:14-cv-01429-JAD-PAL

8                                      Plaintiff,            ORDER

9           v.                                              (Mot Strike – Dkt. #39)

    WAL-MART STORES, INC.,
10
                                       Defendant.
11

12          Before the court is Plaintiff's Motion to Strike Defendant's Answer or for an

13   Adjudication as to Liability, or in the Alternative, for Adverse Presumption or Inference Due to

14   Defendant's Spoliation of Evidence Relating to the Subject Action (Dkt. #39).  The court has

15   considered the motion, Plaintiff's Errata (Dkt. #40), Defendant's Response in Opposition

16   (Dkt. #44), Plaintiff's Reply (Dkt. #52) and the arguments of counsel at a hearing conducted

17   February 23, 2016.  Jared Anderson appeared on behalf Plaintiff, and Robert Phillips appeared

18   on behalf of the Defendant.  At the conclusion of oral argument, the court took the matter under

19   submission to review the video surveillance tape which, due to technical difficulties, the court

20   had not been able to view before the hearing.

21                                **BACKGROUND**

22          This is a slip and fall case.  Plaintiff was in a Wal-Mart Supercenter store located at 300

23   S. Boulder Highway in Pahrump, Nevada on December 11, 2013, when she slipped on liquid

24   soap that had spilled on the floor in front of a self-checkout register.  An incident report, claim

25   notes, and witness statements were taken immediately after the accident.  The Wal-Mart claim

26   notes for this incident direct that employees search for and preserve any and all information and

27   evidence related to the incident.  Wal-Mart's customer accident investigation and reporting

28   procedure outlines the steps that are supposed to be taken to preserve video footage following an

1

accident.  It requires employees to pull all video immediately following the incident/accident, even if it occurs in a general area or next aisle over from where the camera is located.  The policy provides:

> **Step Three – Obtain Video**
> It is essential to pull any CCTV video immediately following the incident/accident, even if it occurs in the general area or next aisle over from where the camera is located.  Obtain video at least one (1) hour prior to and one (1) hour after the incident.  A statement should be completed by the Manager responding to the Code White and identify the exact location on the accident.  The exact location should be given to the Asset Protection Associate (see p. 4).  If the facility does not have an Asset Protection Associate, the Manager who responded to the Code White must pull the video.  The MAPM should be contacted to assist management with this.  The video should be dubbed, labeled and secured as evidence in your store's designated area.  The dubbed copy is kept at store level and the original copy needs to be sent to your CMI adjuster within 24 hours.  Maintain custody of the CCTV surveillance video.  Chain of custody is the documentation of transference or movement of evidence from one person to another.

The Customer Accident Investigation & Reporting Procedures form was filled out by Assistant Store Manager Sophia Huss and attached as Exhibit 5 to the motion.  The form asks whether video footage of the accident was available and "yes" is circled.

Plaintiff retained counsel who sent Wal-Mart a letter of representation and direction to preserve evidence on December 19, 2013, eight days after the accident.  The letter from Attorney Leslie Mark Stovall was addressed to a Ms. Szafranowicz of Sedgwick CMS, Walmart's claims management service.  The letter requested that Wal-Mart:

> Preserve all documents, witness statements, photographs, video recordings, diagrams and/or drawings, and any other physical evidence that in any way relate to this accident.  I specifically request that you preserve any and all surveillance footage of the area in which my client was injured for the entire calendar day of my client's accident.  I would also appreciate copies or the opportunity to inspect any physical evidence and documents relating to this accident.

Wal-Mart did not disclose any video footage in its initial disclosures.  Plaintiff served Wal-Mart with written discovery requests requesting a complete copy of the insurance company's claim file relating to the incident, all records relating to the facts and circumstances of this case, and all surveillance videos or films from December 11, 2013.  Wal-Mart objected to each of these requests, but provided a privilege log with respect to the claims file and directed Plaintiff to look at documents already produced identified by Bates numbers.    Wal-Mart

produced a CD containing video surveillance footage from the location of Plaintiff's fall. However, the footage abruptly ends before Plaintiff's fall.  The motion argues that it appears the portion of the video depicting the scene of the accident just prior to the accident and during the accident itself was deleted.  The video goes from time stamp 2:39:58 p.m. to 3:30:31 before abruptly cutting off.  If the time stamp on the video is accurate, the video footage ends approximately ten minutes before Plaintiff fell which was noted in the accident report as 3:40 p.m.

Counsel for Plaintiff followed up with defense counsel regarding the missing surveillance footage and was informed that Wal-Mart had produced the only video that had been preserved. Wal-Mart attorneys Daniella LaBounty and Breanne Stryker confirmed that Wal-Mart had produced all the evidence which had been preserved.  The soap bottle which spilled on the floor was not preserved.  Plaintiff therefore argues that the court should impose spoliation sanctions. The motion contains a lengthy description of what counsel for Plaintiff characterizes as abusive and obstructive discovery practices and spoliation by Wal-Mart and its litigation counsel.  The motion collects cases from around the country in state and federal court, including this district.

Plaintiff argues that Defendant's willful destruction of evidence merits the striking of its answer and/or an adjudication it is liable for Plaintiff's slip and fall.  Plaintiff suggests that terminating sanctions are warranted because Wal-Mart actually destroyed the video evidence in this case.  Plaintiff claims that Wal-Mart is relying upon the destruction of the video evidence and soap bottle in preparing its defense, and that case terminating sanctions are warranted under the Ninth Circuit's five-factor test outlined in *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995).

Specifically, the destruction of the video footage and soap bottle interferes with the expeditious resolution of this litigation; the court's need to manage its docket making it more difficult and more time intensive for Plaintiff to prove her meritorious case; Plaintiff has been prejudiced because she has the burden to establish both liability and damages and destruction of the video footage hinders her ability to prove her case.  The video footage would have helped to establish that Wal-Mart had actual knowledge of the soap spill and failed to take reasonable

measures to clean it up or warn the Plaintiff about the spill to prevent it.  Alternatively, the video surveillance would have assisted Plaintiff in establishing Wal-Mart had constructive notice of the spill and would also have shown Plaintiff's lack of comparative negligence.  The video surveillance would have shown the manner in which Plaintiff slipped and how hard the fall was which would enable a jury to understand the fall caused serious injuries.  It would also have established how Plaintiff reacted immediately after the fall to controvert Wal-Mart's arguments that Plaintiff did not immediately manifest any injuries.  Stedeford argues that she has and will suffer great prejudice, and without the intervention of the court, Wal-Mart will use the destruction of this evidence to attack her case at trial arguing she cannot prove her liability or damages claims.  Stedeford acknowledges that public policy favors disposition of cases on their merits; however, Wal-Mart's nationwide extensive pattern of discovery obstruction, and misconduct warrant the sanctions requested, and less drastic sanctions would be ineffective to remedy the harm.

If the court is not inclined to impose case-ending sanctions, Stedeford asks that the court impose less drastic sanctions such as adjudication of liability, an adverse inference or presumption against the Defendant, and/or striking Wal-Mart's affirmative defenses.  Stedeford claims that it is clear the soap bottle and video footage were willfully and wrongfully destroyed. The evidence would have been helpful to the Plaintiff and harmful to Defendant.  Wal-Mart was placed on notice shortly after the accident of the need to preserve evidence and its reports confirm that the video existed.  Wal-Mart's written policy directs that the video be preserved. Wal-Mart is a sophisticated business entity with a long track record of wrongfully destroying video footage and other evidence, and has been repeatedly sanctioned for this type of conduct. Even if the court finds the destruction was not knowing and willful, the Plaintiff is not required to establish deliberate destruction of evidence in seeking spoliation sanctions.  Citing *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 108 (2nd Cir. 2002), Stedeford argues that the culpable state of mind required for sanctions does not have to be intentional and includes negligent conduct.  She cites *Hyde & Drath v. Baker*, 24 F.3d 1162, 1171 (9th Cir. 1994) for the proposition that, although good or bad faith may be considered in determining the severity of

4

1    spoliation sanctions, the lack of bad faith does not immunize a party or its attorney from

2    sanctions.

3            Wal-Mart opposes the motion arguing that, although Plaintiff now claims special

4    damages in excess of $1 million dollars arising out of an alleged neck injury, she did not report

5    neck pain to anyone until after she retained counsel.  On December 11, 2013, she reported she

6    slipped and fell on her knees.  She was examined on the day of the accident and her doctors

7    found no neck injury and made no neck related diagnosis.  In fact, the doctors found no objective

8    evidence of any injury at all—no bruising, swelling or scratches.  Thus, Wal-Mart is not

9    surprised that Stedeford wants evidentiary sanctions which would unfairly tilt the balance in her

10   favor because the existing evidence shows she suffered no injury at all that day.

11           Wal-Mart claims that it immediately checked for relevant footage and preserved that

12   footage after the accident.  Assistant Store Manager Sophia Jackson (nee Sophia Hess) filled out

13   a video request form and asked the Asset Protection Manager, Wanda Stilwell, to search for and

14   preserve the footage pertaining to the incident.  According to Wal-Mart, Ms. Stillwell searched

15   for footage of the incident, copied it onto a disk, signed off on the video request form, and

16   provided Ms. Jackson with a signed form and disk.  Ms. Jackson put the form and the disk in Ms.

17   Stedeford's file, and Wal-Mart turned over the disk and that file to Plaintiff's counsel.

18           Wal-Mart argues that because Plaintiff failed to take a single deposition or conduct any

19   necessary discovery about whether there was any additional footage of the incident that should

20   have been preserved, sanctions are not appropriate.  Plaintiff did nothing to ascertain any of the

21   facts regarding the search for surveillance footage and preservation of footage by Ms. Stillwell

22   prior to brining this motion.  Plaintiff has offered no evidence that any video footage existed that

23   was destroyed and merely presumes that because Wal-Mart preserves surveillance footage from

24   a camera which captured ten minutes of footage of the incident area that the same camera must

25   have been a fixed camera directed at the incident both at the time of and ten minutes prior to the

26   incident and must have recorded footage.  Stedeford only assumes footage of the accident existed

27   and that Wal-Mart destroyed it deliberately.

28

1    Wal-Mart contends that cases around the country cited in the motion do not provide any
2    evidence of any wrongdoing by Wal-Mart or its counsel in this case.  Stedeford  cannot meet her
3    threshold burden of showing that relevant evidence existed and was destroyed.   The non-
4    existence of evidence cannot, by itself, establish spoliation.  Here, Plaintiff has failed to offer any
5    evidence that the video of the incident ever existed, or that the missing soap bottle is relevant
6    evidence that was destroyed.

7    Wal-Mart also argues that the letter of representation that was sent on December 19,
8    2013, was sent to Sedgewick, not Wal-Mart.   Wal-Mart is self-insured, is not insured by
9    Sedgewick and there is no evidence of when Sedgewick received the letter.  Thus, the attorney's
10   letter to Sedgewick cannot put Wal-Mart on notice to preserve anything.  Plaintiff failed to take
11   the deposition of Ms. Stillwell, the person who checked for and preserved the video footage.  She
12   also failed to take the deposition of the Assistant Manager who responded to the incident,
13   collected evidence, and prepared the incident report.   Plaintiff failed to take a Rule 30(b)(6)
14   deposition to obtain Wal-Mart's testimony on any issue, let alone the surveillance issue.  Plaintiff
15   failed to undertake any discovery into the store's camera locations, their movability, or whether
16   any camera was positioned to record footage of the subject incident at the time of the incident.

17   Wal-Mart's opposition claims that there is no evidence that the damaged bottle of soap
18   discovered by a store employee at Register 1 was directly involved in the accident.  No one *knew*
19   the bottle was the source of the spill.  Rather, Ms. Jackson and Ms. Matheny presumed it to be
20   the likely source because it was found near Register 1 and because the bottle cap was damaged,
21   consistent with a customer having loaded heavy items onto the top of the bottle, thereby denting
22   its top.  The damaged soap bottle was discarded before Wal-Mart was on any notice of its
23   potential relevance in this litigation.  Plaintiff has not met her burden of establishing spoliation
24   with a culpable state of mind, or that Wal-Mart was negligent, reckless or deliberate in failing to
25   preserve any additional footage.  No spoliation sanctions are therefore appropriate as Stedeford
26   has not and cannot show that footage of the incident ever existed.  In fact, Wal-Mart argues that
27   Plaintiff has no evidence of any kind that Wal-Mart was negligent at the time of the incident.

28

6

1   Wal-Mart argues that she has only brought this motion for spoliation sanctions to make up for
2   the discovery she failed to conduct to prove her case.

3   **DISCUSSION**

4   **I.  Legal Standards**

5   **A.  Spoliation**

6      Spoliation is the destruction or significant alteration of evidence, or the failure to preserve
7   property for another's use as evidence in pending or reasonably foreseeable litigation.  *United*
8   *States v. Kitsap Physicians Svs.,* 314 F.3d 995, 1001 (9th Cir. 2002).  "This is an objective
9   standard, asking not whether the party in fact reasonably foresaw litigation, but whether a
10  reasonable party in the same factual circumstances would have reasonably foreseen litigation."
11  *Micron Technology, Inc. v. Rambus, Inc.*, 645 F.3d 1311, 1320 (9th Cir. 2011).

12     The Supreme Court has recognized that "[d]ocument retention policies, which are created
13  in part to keep certain information from getting into the hands of others, including the
14  Government, are common in business.  It is, of course, not wrongful for a manager to instruct his
15  employees to comply with a valid document retention policy under ordinary circumstances."
16  *Arthur Anderson, LLP v. United States*, 544 U.S. 696 (2005) (internal citation and quotation
17  marks omitted).  The Ninth Circuit has acknowledged that most document retention policies are
18  adopted with benign business purposes understanding the fact that "litigation is an ever-present
19  possibility in American life."  *Micron Technology*, 645 F. 3d at 1322.  A party may appropriately
20  limit the volume of files retaining only materials of continuing value without violating a legal
21  duty.  *Id.*  "Thus, where a party has a long-standing policy of destruction of documents on a
22  regular schedule, with the policy motivated by general business needs, which may include a
23  general concern for the possibility of litigation, destruction that occurs in line with the policy is
24  relatively unlikely to be seen as spoliation."  *Id.*

25     The Ninth Circuit has also held that a party does not engage in spoliation when, without
26  notice of the evidence's potential relevance, it destroys the evidence according to its policy or in
27  the normal course of its business.  *United States v. $40,955.00 in U.S. Currency*, 554 F.3d 752,
28  758 (9th Cir. 2009) (no indication that evidence destroyed with knowledge that it was relevant to

litigation) (*citing United States v. Kitsap Physicians Service*, 314 F.3d 995, 1001-02 (9th Cir. 2002) (no spoliation where evidence destroyed in normal course of business and no indication that relevant to anticipated litigation); *State of Idaho Potato Comm'n v. G&T Terminal Packaging, Inc.,* 425 F.3d 708, 720 (9th Cir. 2005) (same).

### B.  Duty to Preserve

A party's duty to preserve evidence begins when litigation is "pending or reasonably foreseeable." *Micron Technology*, 645 F.3d at 1320.  The mere existence of a potential claim or the distant possibility of litigation is not sufficient to trigger a duty to preserve. *Id.*  Once a party is on notice of a potential claim, it is under a duty to preserve evidence which it knows, or reasonably should know, is relevant to the claim or potential litigation.  *In re: Napster, Inc. v. Hummer*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006) (citing *National Association of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 556-57 (N.D. Cal. 1987) (stating, "[a]s soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action").  Litigation need not be "imminent or probable" to be reasonably foreseeable and "the proper standard for determining when the duty to preserve documents attaches is the flexible one of reasonably foreseeable litigation." *Micron Technology,* 645 F 3d at 1320.  The duty to preserve also extends to the period before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation.  *In re Napster,* 462 F.Supp.2d at 1068 (duty to preserve begins when a party should have known that the evidence may be relevant to future litigation).

A party must preserve evidence it knows or should know is relevant to a claim or defense of any party, or that may lead to the discovery of relevant evidence.  *7-37 Moore's Federal Practice – Civil* § 37.120.  The courts apply an objective standard to determine whether a party's duty to preserve is "reasonably foreseeable."  *Apple Inc., v. Samsung Electronics Co., Ltd.*, 881 F. Supp. 2d 1132, 1145 (N.D. Cal. 2012) (citing *Micron Technology, Inc. v. Rambus, Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011).  The Ninth Circuit reviews the district court's factual finding of when litigation was reasonably foreseeable for clear error.  *Id.* at 1321.

8

### C.  Scope of the Duty to Preserve.

The duty to preserve evidence arises when the party has notice that the evidence is relevant to litigation, for example, "when a party should have known that the evidence may be relevant to future litigation." *Kronisch v. United States*, 150 F.3d, 112, 126 (2d Cir. 1998). *See also MOSAID Techs, Inc. v. Samsung Elcs. Co.*, 348 F.Supp 2d 332, 336 (D.N.J. 2004) (stating that a litigant "is under a duty to preserve what it knows, or reasonably should know, will likely be requested in reasonably foreseeable litigation." "The duty to preserve evidence also 'includes an obligation to identify, locate and maintain, information that is relevant to specific, predictable, and identifiable litigation.'" *Apple,* 881 F. Supp. 2d, at 1136.  A party's duty to preserve relevant documents includes documents or tangible things made by individuals that are likely to have discoverable information that the disclosing party may use to support its claims or defenses. *Id.* (citations omitted).  It also includes documents prepared for those individuals, information that is relevant to the claims or defenses of any party, or the subject matter of the action. *Id.* The duty to preserve also includes information in the possession of "those employees likely to have relevant information—the 'key players' in the case." *Id.* (citations and quotations omitted).

Once a duty to preserve is triggered a party has a duty to suspend any existing policies relating to deleting or destroying files and preserve all relevant documents related to litigation. *In re: Napster*, 262 F. Supp. 2d at 1070, citing *Zubulake v. UBS Warburg LLC,* 220 F.R.D. 212, 218 ("Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents.").  The duty to preserve discoverable materials is an affirmative one. *National Association of Radiation Survivors*, 115 F.R.D. at 557-58.  This affirmative duty requires agents or corporate officers having notice of discovery obligations to communicate those obligations to employees in possession of discoverable materials. *Id.*  "Once the duty to preserve attaches, any destruction of documents is, at a minimum, negligent." *Zubulake*, 220 F.R.D. at 220.  In *Apple*, the court found Samsung violated its duty to preserve when it did not suspend its automatic bi-weekly destruction policy for a software system, failed to distribute litigation hold notices to a sufficient number of employees after litigation was reasonably

foreseeable, failed to follow up with its affected employees for seven months, and failed to monitor its employees' preservation efforts to ensure its employees were all compliant. *Id.* at 1150.

### D. Authority to Sanction.

District courts may impose sanctions for spoliation of evidence as part of their inherent power to "manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *In re: Napster*, 462 F.Supp.2d at 1066 (*citing Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)).  In *Chambers t*he Supreme Court traced the historical origin of the inherent power of a federal court to sanction a litigant for bad-faith conduct. A trial court has the inherent authority to sanction a party for discovery and litigation abuse. *Chambers, 5*01 U.S. 32, 43-50 (1991). "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence and submission to their lawful mandates." *Id.* at 43  (internal citations and quotations omitted).  The court's inherent power is not governed by rule or statute "but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* (citation and quotations omitted).  The existence of a rule or statute does not repeal or modify the court's inherent power to deal with abuses. *Id.* at 49.  The court's inherent power to sanction "can be invoked even if procedural rules exist which sanction the same conduct." *Id.*  However, the court's inherent powers to sanction "must be exercised with restraint and discretion." *Id.* at 44. Although the court has the power to dismiss a lawsuit under its inherent authority, less severe sanctions should be considered. *Id.*

Spoliation sanctions under Rule 37 are also available against a party who fails to obey an order to provide or permit discovery. *Leon v. IDX Systems, Corp.*, 464 F.3d 951, 958.  The Ninth Circuit applies the same burden of proof under Rule 37(b)(2) and Rule 37(d).  The burden is on the party who fails to comply with its discovery obligations to show substantial justification, or that an award of expenses and/or other sanctions would be unjust. *Hyde & Drath v. Baker*, 24 F 3d 1162, 1171.  A finding of bad faith is not required for sanctions under Rule 37, although the good or bad faith of the party may be considered in determining appropriate sanctions. *Id.*

### E.     Standard of Review.

The Ninth Circuit reviews the district court's imposition of spoliation sanctions for an abuse of discretion. *Leon*, 464 F. 3d at 958. The district court's factual findings, including findings of bad faith and prejudice, are reviewed for clear error. *Id.* The district court's credibility determinations are entitled to special deference. *Id.*

### F.   Available Spoliation Sanctions.

A variety of sanctions may be imposed on a party responsible for spoliation of evidence. The court's broad discretion to impose spoliation sanctions should be designed to: (1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party. *Apple*, 881 F. Supp. 2d at 1136 (citations and quotations omitted). An award of spoliation sanctions under the court's inherent powers must be exercised with restraint and should be appropriate to the conduct that triggered the sanction. *Id.* (internal citations and quotations omitted). The sanction the court imposes "must be the least drastic available to adequately mitigate the prejudice" the opposing party suffered. *Id.* at 1150.

### 1.   Adverse Inference Instructions

A court can instruct the jury that it may draw an adverse inference against the party or witness responsible for destroying the evidence. *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993). The court may instruct the jury that that it may infer the spoliated evidence would have been unfavorable to the responsible party. *Id.* A finding of "bad faith" is not a prerequisite to an adverse inference instruction. *Id.* (citing *Unigard Secur. Ins. Co. v. Lakewood Engineering & Manufacturing Corp.*, 982 F.2d 363, 368-70, n.2). An adverse inference instruction may be given upon a finding that the evidence was destroyed after a party was on notice of the potential relevance of the evidence to the litigation. *Id.*

In *Akiona v. United States*, the Ninth Circuit explained the twin rationales for permitting the trier of fact to draw an adverse inference from the destruction of evidence relevant to a case. 935 F.2d 158, 161 (9th Cir. 1991). The evidentiary rationale for an adverse inference is based on

"the common sense observation" that a party who has notice that evidence is relevant to litigation and destroys the evidence is more likely to have been threatened by the evidence than is a party in the same position who does not destroy evidence. *Akiona*, 938 F.2d at 161.  There is also a deterrence rationale for permitting the trier of fact to draw an adverse inference from the destruction of evidence because an adverse inference instruction punishes a party for wrongdoing and is intended to deter others from destroying relevant evidence.  *Id.*

Adverse inference instructions range in their level of severity.  *Apple,* 881 F. Supp. 2d at 1150.  The most harsh adverse inference instruction directs the jury to deem certain facts admitted and accepted as true.  *Id.*  When a spoliating party has acted willfully or recklessly a lesser adverse inference instruction imposes a mandatory presumption.  *Id.*  The least harsh instruction allows the jury to presume that lost evidence is both relevant and favorable to the innocent party.  *Id.*  If the jury makes the presumption, "the spoliating party's rebuttal evidence must then be considered by the jury, which must then decide whether to draw an adverse inference against the spoliating party."  *Id.*  The Ninth Circuit has held that a trial court's "adverse inference sanction should be carefully fashioned to deny the wrongdoer the fruits of its misconduct yet not interfere with the party's right to produce other relevant evidence."  *In re: Oracle Corp. Securities Litigation*, 627 F.3d 376, 386 (9th Cir. 2010).

### 2.  Evidentiary Sanctions

A court may impose evidentiary sanctions on a party responsible for destroying or failing to preserve evidence.  *Glover,* 6 F.3d 1318, 1329 (9th Cir. 1993).  ("A federal trial court has the inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence. Such power includes the power where appropriate to order the exclusion of certain evidence").  *Id.*  Evidentiary sanctions may include introduction of evidence of spoliation, preclusion sanctions, excluding evidence and witness testimony, and taking matters deemed as admitted.  *See*, *e.g., Unigard*, 982 F.2d at 368-69 (excluding evidence as a sanction under the court's broad discretion to make evidentiary rulings conducive to the conduct of a fair and orderly trial) (internal citations and quotations omitted).  In *Unigard* the

1   Ninth Circuit upheld the trial court's order excluding plaintiff's expert from testifying based on

2   evidence plaintiff destroyed two years before filing suit.

3                    **3.    Monetary Sanctions**

4           The court may also award monetary sanctions in the form of attorney's fees against a

5   party or counsel who acts "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Leon*,

6   464 F.3d at 961.   Before awarding such sanctions, however, a court must make an express

7   finding that the sanctioned party's behavior amounted to "bad faith." *Id.*   A party "demonstrates

8   bad faith by delaying or disrupting the litigation or hampering enforcement of a court order." *Id.*

9   Where the court finds a party has acted in bad faith, any award of attorney's fees must be

10  reasonable. *Id.*

11                   **4.    Dispositive Sanctions**

12          Finally, a court may impose litigation-ending sanctions such as dismissal.   Dismissal,

13  however, is only appropriate where "a party has engaged deliberately in deceptive practices that

14  undermine the integrity of judicial proceedings." *Leon,* 464 F.3d at 958, (*citing Anheuser-Busch,*

15  *Inc. v. Natural Beverage Distributors,* 6 F.3d 337, 348 (9th Cir. 1995).   Dispositive sanctions

16  "should not be imposed unless there is clear and convincing evidence of both bad-faith spoliation

17  and prejudice to the opposing party." *Micron Technologies,* 645 F. 3d at 1328-29.   Additionally,

18  "the presence of bad faith and prejudice, without more, do not justify the imposition of

19  dispositive sanctions." *Id.* at 1329.   The district court must take into account: (1) the degree of

20  fault of the party who spoliated; (2) the degree of prejudice suffered by the opposing party; and

21  (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party

22  and, where the offending party is seriously at fault, will serve to deter such conduct by others in

23  the future. *Id.* at 1329, (citing *Shmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3rd Cir.

24  1994) (internal quotations omitted)). "The district court must 'select the least onerous sanctions

25  corresponding to the willfulness of the destructive act and the prejudice suffered by the victim.'"

26  *Id.* (citing *Shmid*, 13 F.3d at 79).

27          Before imposing the "harsh sanction" of dismissal, a court must consider five factors: (a)

28  the public's interest in expeditious resolution of litigation; (b) the court's need to manage its

docket; (c) the risk of prejudice to the party seeking sanctions; (d) the public policy favoring disposition of cases on their merits; and (e) the availability of less drastic sanctions. *Id.* The factors the Ninth Circuit applies in reviewing whether the district court properly considered lesser sanctions prior to dismissal are: (1) whether the district court explicitly discussed the feasibility of less drastic sanctions and explained why alternate sanctions would not be appropriate; (2) whether the district court implemented alternative sanctions before ordering dismissal; and (3) whether the district court warned the party of the possibility of dismissal before ordering dismissal. *Leon*, 464 F.3d at 960.  However, the second factor is inapplicable when the spoliation occurs before a district court has the opportunity to compel discovery or order lesser sanctions. *Id.*  Similarly, the third factor is inapplicable when the destruction of evidence occurred before the court had any opportunity to warn the spoliating party. *Id.*  When the only factor weighing against dismissal is the public policy favoring disposition of cases on their merits, this factor is not enough, standing alone, to outweigh the other four factors. *Id.* at 961.

In addition, due process requires a relationship between the sanctioned party's misconduct and the matters in controversy such that spoliation threatens to interfere with the rightful decision of the case. *Anheuser-Busch*, 69 F.3d at 348.  Dismissal may be warranted where: (1)  a party has engaged deliberately in deceptive practices that undermine the integrity of the judicial proceedings; (2) a party's denials of material fact were knowingly false; and (3) a party willfully failed to comply with discovery orders; (4) a party falsified a deposition; (5) in response to abusive litigation practices; (6) for concealing documents and violating the court's discovery orders; and (7) to ensure the orderly administration of justice and the court's orders. *Id.*

### G.  Bad Faith.

A determination of bad faith is generally required before dispositive sanctions may be imposed under the court's inherent powers. *Micron Technology*, 645 F.3d at 1326.  "The fundamental element of bad faith spoliation is advantage-seeking behavior by the party with superior access to information necessary for the proper administration of justice." *Id.*  A district

court's determination of bad faith must do more than state a conclusion. *Id.* at 1327.  The district court must first find that spoliation was intentional.  *Id.*  The proper inquiry is whether the party intended to impair the ability of the adverse party to preserve its claims or defenses.  *Id.* (citing *Shmid*, 13 F.3d at 80).  If the district court finds that a party's "goal was to obtain an advantage in litigation through that control of information and evidence, it would be justified in making a finding of bad faith." *Id.*

The court is not required to find bad faith to award an adverse inference sanction.  *Apple*, 881 F.Supp 2d at 1147, ("all that the court must find is that [the spoliator] acted with a 'conscious disregard' of its obligation.")  *Id.*

"The court need not find bad faith by the offending party before issuing sanctions for destruction of evidence; willfulness or fault can suffice."  *Nursing Home Pension Fund v. Oracle*, 254 F.R.D. 559, 563 (N.D. Cal. 2008) (citing *Leon*, 464 F.3d at 958).  "Sanctions may be appropriate when the party knew or should have known that destroyed evidence was potentially relevant to litigation."  *Id.* (citing *Glover*, 69 F.3d at 1329).  *See also In re: Napster*, "District courts may impose sanctions against a party that merely had notice that the destroyed evidence was potentially relevant to litigation."  462 F. Supp. 2d at 1067.

### H. Prejudice.

`The party asserting it has been prejudiced by spoliation must show the spoliation materially affects its substantial rights and is prejudicial to the presentation of its case.  *Micron Technology*, 645 F.3d at 1328 (citing *Wilson v. Volkswagon of Am., Inc.*, 561 F.2d 464, 504 (4th Cir. 1977) (internal quotations omitted).  To satisfy its burden, the party asserting prejudice must only "come forward with plausible, concrete suggestions" about what the spoliated evidence "might have been."  *Id.* (citing *Shmid*, 13 F.3d at 80).  However, if the court finds the spoliator acted in bad faith, the spoliator bears the "heavy burden" to show a lack of prejudice to the opposing party.  *Id.*  A party guilty of intentional spoliation "should not easily be able to excuse the misconduct by claiming" that the spoliated evidence was of "minimal import."  *Id.* (citations omitted). A party seeking spoliation sanctions need not show the loss of evidence would have changed the outcome of the trial, only that the spoliated evidence "clearly impaired" its "ability

to go to trial" or threatens to interfere with the rightful decision of the case. *Anheuser-Busch*, 69 F.3d at 354.

**II. Analysis.**

Wal-Mart's conduct was not in violation of any discovery order governed by Rule 37. However the court finds sanctions are appropriate under the court's inherent power because Wal-Mart failed to preserve video surveillance evidence and destroyed the soap bottle after it was on notice of Stedeford's reasonably foreseeable claim. Sanctions are warranted because Stedeford's report of an injury resulting from her slip and fall in the store for which she intended to seek medical attention, made a claim reasonably foreseeable. Wal-Mart failed to preserve video and destroyed the soap bottle under circumstances in which it knew or should have known of their potential relevance to Stedeford's claim. Wal-Mart had a duty to preserve evidence and was required to suspend any existing policies related to deleting or destroying evidence and to preserve relevant evidence. Wal-Mart's own policies require preservation of video surveillance and other evidence following an incident report. Additionally, if there was any question at all that litigation was reasonably foreseeable that question was put to rest when Stedeford retained counsel who sent Wal-Mart's claims management service, Sedgewick, a letter demanding preservation of video and other relevant evidence eight days later on December 19, 2013.

As an initial matter, Wal-Mart's written opposition claims that Plaintiff has no proof that the letter Plaintiff's counsel sent to Sedgewick was received by Wal-Mart. The opposition also states that Wal-Mart is self-insured, and seems to argue that the letter sent to Sedgewick was not notice to Wal-Mart. The court categorically rejects these arguments. First, the letter was sent to Sedgewick via regular mail and facsimile. The motion attaches a copy of a facsimile transmission confirmation which establishes the letter was sent and received.

Second, there is a presumption that a letter issuance date is the date on which the letter was mailed. *Payan v. Aramark Mgmt. Servs. Limited Partnership*, 495 F.3d 1119, 1123 (9th Cir. 2007). This is generally referred to as the "mailbox rule." "The mailbox rule provides that the proper and timely mailing of a document raises a rebuttable presumption that the document has been received by the addressee in the usual time." *Schikore v. BankAmerica Supplemental Ret.*

16

*Plan*, 269 F.3d 956, 961 (9th Cir. 2001).  The mailbox rule is a "settled feature of the federal common law." *Id.* "As a rebuttable presumption, it does not operate as a rule of construction, dictating that a requirement of receipt should be read as a requirement of timely mailing.  Rather, it is a tool for determining, in the face of inconclusive evidence, whether or not receipt has actually been accomplished." *Schikore*, 269 F.3d at 961.  The mailbox rule "applies only when the fact of receipt is disputed." *Payon,* 495 F.3d at 1123 n.4.

A certified mail receipt is not required for the mailbox rule to apply. *Turner v. Dep't. of Educ. Hawaii*, 855 F.Supp.2d 1155, 1165 (D. Haw. 2012), *affm'd* 539 Fed. App'x 731 (9th Cir. 2013).  The mailbox rule was "developed precisely to aid finders of fact in circumstances where direct evidence of either receipt or non-receipt is…not available." *Tuner*, 855 F.Supp 2d at 1167 (quoting *Shikore*, 269 F.3d at 961-63, ("In the absence of the use of registered or certified mail, on the one hand, and a returned envelope or other indication of failed delivery, on the other, both receipt and non-receipt are difficult to prove conclusively." ) (internal quotations omitted).

Third, to the extent Wal-Mart is arguing that Sedgewick's receipt of the preservation letter was not notice to Wal-Mart, the court categorically rejects this argument as well.  During oral argument, and in many prior cases before the court, Wal-Mart has described Sedgewick as its third-party claims manager or adjuster.  Under general agency principles, notice to an agent is notice to the principal.  The Ninth Circuit has adopted the Restatement (Third) of Agency as the federal common law of agency.  Agency is the fiduciary relationship that arises when a principal manifests assent to an agent that the agent shall act on the principal's behalf and subject to the principal's control and the agent manifests assent or otherwise consents to act on the principal's behalf.  Restatement (Third) of Agency § 1.01 (2006); *see also Sarei v. Rio Tinto, PLC*, 487 F.3d 1193, 1202 (9th Cir. 2007), on reh'g *en banc* 550 F.3d 822 (9th Cir. 2008) (citing *Moriarti Glueckert Funeral Home, Ltd.*, 155 F.3d 859, 866 n.15 (7th Cir. 1998) for the proposition that federal common law of agency is derived from the Restatement of Agency); *Sun Microsystems, Inc. v. Hynix Semiconductor, Inc.*, 622 F.Supp.2d 890, 899 (N.D. Cal. 2009) ("federal common law is in turn guided by those principles set forth in the Restatement of Agency.").  Agency can

be established expressly, by a showing of actual authority, or inferred, by finding apparent authority or ratification. *Id.* §§ 2.01, 2.03. 4.01.

The knowledge of an officer or agent is imputed to the corporation when the agent obtains the knowledge "while acting in the course of his employment and within the scope of his authority, and the corporation is charged with such knowledge even though the officer or agent does not in fact communicate his knowledge to the corporation." *Strohecker v. Mut. Bldg. & Loan Ass'n of Las Vegas*, 34 P.2d 1076, 1077 (Nev. 1934); Restatement (Third) of Agency § 5.03 (2006); *USACM Liquidating Trust v. Deloitte & Touche, LLP*, 764 F.Supp 2d 1210, 1222 (D. Nev. 2011). ("USACM"). "Ordinarily, an agent's failure to disclose a material fact to a principal does not defeat imputation, not does the fact that the agent's action otherwise constitutes a breach of duty owed the principal." *Id.*

Wal-Mart, like many large companies, is self-insured. Like many self-insured companies, Wal-Mart contracts with a third-party administrator, Sedgewick, to handle the claims that arise under its self-insured program. 1-2 New Appleman Insurance Law § 4.03[6] (2015). A third party administrator investigates and adjusts claims in much the same way as a typical claims adjuster working for an insurer, even though payment of the claim will come from a self-insured company rather than an insurer. *Id.* "A claims adjuster is considered an agent of his or her principal, either the insurer or the insured, and the law of agency applies to determine if the adjuster's conduct or knowledge will be imputed to his or her principal." 1-2 New Appleman Insurance Law § 4.03[2] (2015) (citing *Chubb & Son v. Consoli*, 726 N.Y.S. 2d 398, 400 (N.Y. App. Div. 2001) (finding that adjuster was not exempt from agency principles). Since third-party claims administrators perform the same function as a claims adjuster on behalf of a self-insured company, but on a contractual basis, third-party administrators are also subject to agency principles. *Id. See* also, *Diaz v. Fed. Express Corp.*, 373 F.Supp 2d 1034, 1041, 1045 (C.D. Cal. 2005) (noting that "Sedgewick Claims Management Services, Inc. was the "agent" of a self-insured defendant in its capacity as the defendant's third-party administrator for worker's compensation claims).

1    In this case, Ms. Stedeford indicated she had injured her knee, reported the injury to

2    multiple employees, and the incident and witness reports reflect that she intended to seek

3    medical treatment.  The duty to preserve relevant evidence was therefore triggered on December

4    11, 2013.  The assistant store manager directed the asset protection manager to collect and

5    preserve evidence in accordance with Wal-Mart's own policies.

6    Wal-Mart received notice that Plaintiff had retained counsel who demanded that

7    evidence, and in particular, video evidence be preserved eight days later.  There is no question

8    that Sedgewick Claims Management Services, Inc. was Wal-Mart's third-party administrator and

9    agent.  As such, Sedgewick's knowledge of Plaintiff's claim is imputed to Wal-Mart, and Wal-

10   Mart had a duty to preserve when its agent, Sedgewick, received the letter.  Wal-Mart was

11   obligated to suspend its usual practices relating to deleting or destroying video evidence and to

12   preserve it.  Wal-Mart has a duty to see that its employees are actually complying with its

13   detailed instructions and policies that are intended to comply with its legal obligations to

14   preserve, and to verify that employees are actually complying.  *Apple,* 881 F. Supp. 2d at.1147.

15   Wal-Mart also has a duty to see that its agents and corporate officers having notice of its

16   discovery obligations communicate those obligations to the employees in possession of

17   discoverable materials.  *Id.* at 1070.

18   Wal-Mart next claims that there is no proof that video surveillance footage of the incident

19   exists. The court disagrees. Wal-Mart's opposition incorrectly claims 10 minutes of video of the

20   front register where the incident occurred was produced in this case.  However, the video which

21   was produced in discovery and provided to the court as an exhibit to the motion contains fifty

22   minutes of uninterrupted viewing of the same fixed location.   The video footage abruptly ends

23   approximately 10-13 minutes before Plaintiff's slip and fall.  (The time of the incident was either

24   3:40 or 3:43 based on the reports and witness statements).

25   Wal-Mart has no explanation at all for the failure to preserve video of the incident. This

26   is information in Wal-Mart's exclusive possession and control.  During oral argument, counsel

27   for Wal-Mart indicated he had no idea why the available video abruptly ended ten minutes

28   before the accident and acknowledged that the jury would expect some explanation.  The court

finds Wal-Mart's willful ignorance concerning the lack of preserved video both disturbing, and an indication that Wal-Mart does not adequately communicate its preservation duties to store level employees responsible for preservation of potentially relevant evidence.  That its litigation counsel did not bother to find out why video of the incident was not preserved, even in the face of a motion for spoliation sanctions, is indicative of its conscious disregard of its duty to preserve potentially relevant evidence.

The court is also troubled by experience in presiding over many Wal-Mart cases in more than fifteen years on the bench in which Wal-Mart has had and produced video evidence when it is favorable to Wal-Mart, e.g., when video shows the plaintiff failing to pay attention, drunk or otherwise impaired, causing or contributing to the accident, or immediately getting up after a fall and continuing shopping.  In a number of prior cases Wal-Mart has explained its failure to preserve video by claiming the incident was not captured on camera.   Wal-Mart has often explained that the reason certain areas of stores do not have video footage is because its cameras are primarily focused on high traffic, high security areas, and in particular its cash registers.  This incident occurred in front of the front cash register area of the store.  An abrupt end to fifty minutes of video in front of the cash registers ten minutes before the accident is therefore inherently suspect in light of what the court has been told about how Wal-Mart focuses its camera coverage in prior cases.

Moreover, in response to this motion and in many prior Wal-Mart cases the court and opposing counsel are told that Wal-Mart is self-insured.  The court and opposing counsel have frequently been reminded by Wal-Mart's litigation counsel and company representatives in settlement conferences that any settlement or judgment comes out of the individual store manager's "bottom line", i.e., potential store profit.  The court and opposing counsel are often told that payment of settlements will reduce not only a store's profitability but will result in less money available for employee bonuses.  Knowledge that paying a settlement or judgment will reduce profitability and adversely affect employee bonuses at the store level may legitimately be intended to give managers and employees an incentive to see that the premises are safely

1  maintained.  However, that knowledge may have the opposite effect on impressing on managers

2  and employees the duty to preserve potentially unfavorable evidence.

3  Wal-Mart's opposition attempts to shift the burden to Plaintiff to conduct discovery to

4  determine why there is no video of the incident. This unavailing argument is straight out of "the

5  best defense is a good offense" playbook. The argument overlooks the fact that it is Wal-Mart's

6  obligation to preserve, not Plaintiff's obligation to explore, through expensive discovery, why

7  the evidence was not preserved.  Certainly, if Stedeford had conducted discovery, the record

8  would be more fully developed, and the court would have information on which to determine

9  whether the video was intentionally or merely negligently destroyed.  Wal-Mart had the ability to

10 find out the truth but failed to do so.  There is no question that the soap bottle was intentionally

11 destroyed.  Store level employees did not understand why it was relevant or should have been

12 kept, even as litigation counsel told the court he was sorry it was destroyed because he could

13 have explored a potential claim against a vendor or manufacturer.  Wal-Mart failed in its duty to

14 explain its preservation duties to the employees responsible in the first instance for preserving

15 relevant evidence.

16 The Customer Accident Investigation and Reporting Form signed by Assistant Store

17 Manager Huss, now Jackson, and Asset Protection Manager, Wanda Stillwell, indicates that

18 video footage was available.  Directly below the form where the question asks whether video

19 footage is available, the form is circled "yes" and contains the remark "could not tell if it was

20 dropped or leaked from a customer cart prior to the fall."  This strongly suggests that the footage

21 of the incident was reviewed and whoever reviewed it determined that liquid was dropped or

22 leaked before the fall.  It also suggests that the author of the report could not tell whether the

23 soap spill on the floor was dropped or leaked from a customer cart prior to the fall.  The most

24 reasonable inference from the evidence that does exist is that the soap bottle was the source of

25 the liquid on the floor that caused the fall, and that there was video of liquid on the floor before

26 the incident.  The form that was filled out, statements and the fifty minutes of video that were

27 preserved and reviewed persuade the court that video of the incident existed.  Video of the front

28 cash register area where the accident occurred was unquestionably relevant.

Wal-Mart next argues that it had no duty to preserve the dish soap bottle because it was not relevant evidence.  However, at least two Wal-Mart employees concluded that the damaged liquid soap bottle was the likely source of the liquid that was spilled on the floor where the Plaintiff fell.  Wal-Mart's opposition argues the bottle was destroyed because the employees involved in investigating the incident only "presumed" the bottle was the source of the liquid on the floor and did not "know" it was the source.  However, any opportunity to explore the truth of the matter was destroyed when Wal-Mart destroyed the evidence. Yet Wal-Mart's opposition suggests its litigation strategy is to argue the involved employees made unsupported assumptions.  More significantly, during oral argument, counsel for Wal-Mart conceded the damaged soap bottle was relevant by arguing he was sorry it was destroyed because if Wal-Mart preserved it, it would have enabled Wal-Mart to explore whether it could pursue a claim against a vendor or manufacturer of the product.  The court finds that Wal-Mart failed to preserve relevant evidence.

Wal-Mart's opposition to the motion attached the declarations of Ms. Matheny and Ms. Jackson (nee Huss).  Ms. Jackson's declaration avers that she is the Assistant Store Manager at the store in issue.  Jackson Declaration ¶1.  On December 11, 2013, she prepared an incident report following Ms. Stedeford's report of a slip-and-fall incident.  *Id.* ¶2.  Following the incident, she filled out a video request form and turned the form over to the Asset Protection Manager, Wanda Stillwell, who had familiarity with the camera system and Wal-Mart's protocols for searching for and preserving video footage following a customer incident.  *Id.*  Ms. Jackson asked Ms. Stillwell to obtain footage of the incident area, if available, one hour before and one hour after the incident.  *Id.*  Ms. Stillwell signed the video request form on December 11, 2013, confirming that she had searched for footage.  *Id.*  Ms. Stillwell provided Ms. Jackson with the signed video request form and a disk of video footage she had found of the incident area.  *Id.*  Ms. Jackson did not review what was on the disk, but ensured that both the completed request form and disk were included in Ms. Stedeford's incident file.  Ms. Stillwell no longer works for the company.  *Id.* ¶5.  Ms. Jackson did not witness Ms. Stillwell's search for the footage of the incident area or her transfer of that footage to a disk and does not know whether the camera that

1    caught the pre-incident footage of the incident area was a movable camera.  *Id.*  Ms. Jackson

2    does not know whether the incident itself was captured by any Wal-Mart camera, or whether the

3    ten minutes preceding the incident was captured by any Wal-Mart camera.  *Id.*

4           Ms. Jackson's declaration also indicates that Assistant Manager, Heather Matheny,

5    responded to the customer injury code on December 11, 2013.  *Id.* ¶7.  Ms. Matheny's witness

6    statement indicated that she discovered a broken bottle of soap "kinda in that area."  *Id.*  Ms.

7    Jackson observed the bottle discovered by Ms. Matheny with damage to its cap "consistent with

8    it having been placed under heavy items in a customer's cart."  *Id.*  The cap had been broken,

9    leaving only a piece of the cap behind.  *Id.*  Based on what she saw where the bottle was

10   discovered, she concluded and noted in her incident report "that the bottle was the likely source

11   of the liquid."  *Id.*  She understands from her training and experience at Wal-Mart "that we do

12   not need to preserve physical evidence unless that evidence was directly involved in the

13   customer injury."  *Id.* ¶9.  She knew of no reason to save the bottle because it "was not directly

14   involved in this incident and no one was sure whether the spill had even come from this bottle."

15   *Id.*

16          Ms. Matheny's declaration states that she was the Assistant Manager at Wal-Mart on

17   December 11, 2013, and responded to an injury code involving Ms. Stedeford.   Matheny

18   Declaration ¶¶1, 2.  After the incident, she looked for anything that might have been the source

19   of the liquid on the floor where the customer said she had slipped.  *Id.* ¶3.  She found a soap

20   bottle on top of a beverage cooler next to Register 1.  She did not know whether the bottle was

21   the actual source of the spill, but assumed it might be and informed her manager, Ms. Jackson,

22   about what she found.  *Id.* ¶4.  The bottle was damaged because the cap was broken.  *Id.* ¶5.  The

23   top of the bottle was indented and part of the cap was broken off.  *Id.*  She concluded this

24   damage was "consistent with a customer loading heavy items onto the top of the bottle, with the

25   bottle in the shopping cart."  *Id.*  She "dropped the bottle off with Claims, which is the

26   department in our store that processes any damaged merchandise."  *Id.*  Based on her training

27   and experience with Wal-Mart, employees "are required to deliver damaged merchandise to the

28   Claims Department."  *Id.*

1    Based on the record before the court the question is not whether sanctions are
2    appropriate, but what sanction fits the violation.  Any spoliation sanction the court imposes must
3    be appropriate to the conduct that triggered the sanction.  *Chambers*, 501 U.S. at 44-45.  The
4    harsh sanction of dismissal is not warranted.  However, the court concludes that evidentiary
5    sanctions and an adverse inference instruction are warranted.  Plaintiff has been prejudiced by
6    the failure to preserve the video and soap bottle Wal-Mart employees involved in the
7    investigation concluded was the source of the liquid on the floor.  Wal-Mart's litigation position
8    is that Plaintiff has no proof it was negligent, and its employees made unsupported assumptions
9    about the source of the liquid on the floor.  Wal-Mart can hardly argue Plaintiff cannot prove her
10   case because it destroyed the best evidence of what did or did not occur. Plaintiff is reduced to
11   relying on her own testimony, that of her daughter who was with her, and the reports of Wal-
12   Mart current or former employees whose lawyers say they did not have a basis for the
13   conclusions they reached.  Plaintiff is forced to rely on incomplete and spotty evidence to
14   support her claims.

15   Wal-Mart failed to preserve evidence after it was on notice Plaintiff claimed she was
16   injured and intended to seek medical attention.  Wal-Mart's agent, Sedgewick received formal
17   notice of Plaintiff's retention of counsel and demand to preserve eight days later, giving it an
18   additional opportunity to comply with its legal duty.  It could have and should have taken steps
19   to see that relevant evidence was properly preserved.  It did not and has no explanation for it.
20   The court finds Wal-Mart acted in conscious disregard of its legal duty to preserve evidence.
21   However, there is no evidence Wal-Mart intentionally destroyed evidence.

22   The court finds that two evidentiary sanctions and an adverse inference instruction will
23   best accomplish the goals of deterring Wal-Mart and others from failing to comply with their
24   preservation duties, place the risk of an erroneous judgment on the party responsible for the lack
25   of evidence, and restore Stedeford to the position she would have been in but for Wal-Mart's
26   failure to preserve relevant evidence.  First, the court will preclude Wal-Mart from introducing
27   evidence, testimony or argument of an innocent explanation for the lack of video of the incident.
28   Having declined to learn the truth, and provide an explanation before the close of discovery or in

24

response to this motion, Wal-Mart should not be permitted to explain away the lack of video to the jury.  Second, Wal-Mart will be precluded from presenting evidence contradicting the observations and conclusions of its own employees who were involved in the investigation that there was liquid on the floor in front of the cash register area before the incident, believed to come from a soap bottle found nearby.  Finally, the jury should be given an adverse inference instruction that Wal-Mart had a duty to preserve relevant evidence on the date of the incident, failed to comply with its legal obligation, and that the jury may infer that the evidence would have been favorable to the Plaintiff and unfavorable to Wal-Mart.

**IT IS ORDERED** Plaintiff's Motion (Dkt. #39) is **Granted in part and Denied in part** consistent with the sanctions found appropriate in this order.

Dated this 24th day of June, 2016.

PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE

25