UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Ruth Ann Stedeford,<br><br>    Plaintiff<br><br>v.<br><br>Wal-mart Stores, Inc.,<br><br>    Defendant | 2:14-cv-01429-JAD-PAL<br><br>**Order on Motions in Limine<br>to Strike Expert Opinions**<br><br>**[ECF Nos. 37, 38]** |

  Ruth Ann Stedeford brings this negligence action to redress the personal injuries that she claims she sustained when she slipped and fell on soap spilled on the floor of a Wal-mart Supercenter in Pahrump, Nevada. Stedeford underwent cervical-disc-fusion surgery, and her spinal surgeon, Dr. Thomas Dunn, M.D., opines that Stedeford will require future surgery.

  To respond to Dr. Dunn's anticipated testimony, Wal-mart has designated two proposed experts: Neurologist Steven McIntire, M.D., who disputes Stedeford's need for the treatment she received,[1] and Radiologist Michael Reid, M.D., who intends to testify that Stedeford's films show only degenerative abnormalities and no evidence of "an acute event."[2] Stedeford moves to strike their opinions. She argues that Dr. McIntire is not qualified to testify about spinal surgery, so his opinions are based on supposition, not science.[3] Stedeford does not deny that Dr. Reid is a qualified radiologist, but she contends that his review of her radiological films gives him too narrow a basis from which to opine about the cause and extent of her injuries.[4]

  Stedeford has not deposed these experts, and the bulk of her arguments are based on unauthenticated deposition excerpts and trial court orders about the sufficiency of his reports in

---

[1] ECF No. 37 at 24.

[2] ECF No. 38 at 14.

[3] ECF No. 37.

[4] ECF No. 38.

entirely unrelated cases. Because I find that both doctors are qualified to give the narrow opinions they offer and that Stedeford's argument that Dr. Reid's opinion is not reliable goes to weight, not admissibility, I deny the motions.

**Discussion**

**A.    Motions in limine**

The Federal Rules of Evidence do not expressly authorize motions in limine, but district courts can rule on pretrial evidentiary motions under their "inherent authority to manage the course of trials."[5] Pretrial consideration avoids the futile attempt to "unring the bell" when jurors see or hear inadmissible evidence, even when it is stricken from the record.[6] It may also save time by minimizing side-bar conferences and other trial disruptions and by preventing the need to call some witnesses.[7]

These considerations are weighed against the court's ability to consider evidence in the context of trial, where the court is "better situated . . . to assess the value and utility of evidence."[8] Limine rulings are provisional; they are "not binding on the trial judge [who] may always change [her] mind during the course of a trial."[9] Denying a motion in limine does not guarantee that all evidence raised in the motion will be admissible at trial.[10] Instead, it "merely means that[,] without the context of trial, the court is unable to determine whether the evidence in question should be

---

[5] *Luce v. United States*, 469 U.S. 38, 40 n. 4 (1984).

[6] *Brodit v. Cambra*, 350 F.3d 985, 1004–05 (9th Cir. 2003) (quoting *Kelly v. New W. Fed. Savs.*, 49 Cal. App. 4th 659 (Cal. Ct. App. 1996)).

[7] *United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002).

[8] *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1218 (D. Kan. 2007); *accord Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975) ("A better practice is to deal with question of admissibility of evidence as they arise.").

[9] *Ohler v. United States*, 529 U.S. 753, 758 n. 3 (2000) (citing *Luce*, 469 U.S. at 41–42 (noting that in-limine rulings are always subject to change, especially if the evidence unfolds in an unanticipated manner)).

[10] *Indiana Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004).

excluded."[11]

**B.     Expert testimony**

Before a witness may come "before the jury cloaked with the mantle of an expert[]," the district court must take care to assure that the "proffered witness truly qualifies as an expert" under FRE 104 and that his "testimony meets the requirements of" FRE 702.[12]  In its role as gatekeeper, the trial court must first determine whether the witness is "qualified as an expert by knowledge, skill, experience, training, or education[.]"[13]  If the witness qualifies as an expert, the court then considers "whether the reasoning or methodology underlying the testimony is scientifically valid"—the reliability inquiry—and "whether that reasoning or methodology properly can be applied to the facts in issue" in the case—the relevancy inquiry.[14]

**C.     The record demonstrates that Doctor McIntire is qualified to offer his proposed opinions.**

Stedeford's motion to strike Dr. McIntire's opinion targets only his qualifications: because he is not a spinal surgeon, he is unqualified to dispute Dr. Dunn's opinions about Stedeford's prognosis and course of treatment.  Rule 702's requirement that an expert be qualified "contemplates a broad conception of expert qualifications."[15]  "The advisory committee notes emphasize that Rule 702 is broadly phrased and intended to embrace more than a narrow definition of qualified expert."[16]  Even the most qualified expert may not offer any opinion on any subject; the expert's opinion must be

---

[11] *Id.*

[12] *Jinro America, Inc. v. Secure Investments, Inc.*, 266 F.3d 993, 1004, *amended*, 272 F.2d 1289 (9th Cir. 2001).

[13] Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995) ("*Daubert II*").

[14] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592–93 (1993).

[15] *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1015 (9th Cir. 2004) (quoting *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269 (9th Cir. 1994)).

[16] *Id.* (quoting *Thomas*, 42 F.3d at 1269).

grounded in his or her personal "knowledge, skill, experience, training, or education."[17]

Dr. McIntire's training and education are well established by the record. His curriculum vitae reflects that he received his MD in medicine and PhD in neuroscience from Harvard Medical School and that he is a consulting professor at Stanford University School of Medicine, with expertise and experience in spinal injuries.[18] He has been a licensed physician since 1993.[19]

His knowledge, skill, and experience are also evident. Although Dr. McIntire's deposition was not taken in this case, Wal-mart offers properly authenticated excerpts of testimony that Dr. McIntire provided in an unrelated case where he explained that "neurologists are responsible for evaluating and treating conditions of the nervous system, which one could look at as the brain, the spinal cord[,] and the peripheral nerves."[20] And, even though he does not perform spinal-surgery procedures himself, neurologists are "diagnosticians" so, in his neurology practice, he frequently determines whether spinal-surgery procedures are called for.[21] Were Dr. McIntire proposing to opine about the manner or method in which Stedeford's spinal surgery was performed, his lack of surgical experience may be disqualifying. But he intends to opine only about whether the surgery was indicated, and the record demonstrates, by a preponderance of the evidence, that Dr. McIntire is qualified to offer that narrow opinion. Accordingly, Stedeford's motion to strike Dr. McIntire's expert opinion is denied.

**D.    Plaintiff has not demonstrated a basis to exclude Dr. Reid's opinion.**

Stedeford argues that Dr. Reid's opinion should be stricken because his "opinion that there is no evidence of an injury caused by a 'traumatic event' is unhelpful and unreliable," and the fact that Dr. Reid "has not reviewed Plaintiff's medical records and he has never examined Plaintiff" renders

---

[17] Fed. R. Evid. 702.

[18] ECF No. 42-2.

[19] *Id*.

[20] ECF No. 42-7 at 3:21-24.

[21] *Id*. at 5:25–6:10.

his causation opinion unreliable.[22]

First, Stedeford greatly overstates the scope of Dr. Reid's opinion. Dr. Reid's brief, two-page report recounts only that he read five films from 2014 and concluded that they show "[o]nly degenerative abnormalities" and "no radiographic indication of an acute event preceding or following" Stedeford's spinal surgery.[23] He does not offer a causation opinion. He says nothing of a "traumatic event." He only summarizes what he, as a radiologist, visually perceives in these films. Stedeford has not shown that Dr. Reid is unqualified to render the narrow opinion that he offers. Dr. Reid's curriculum vitae reflects that he has been a Board-certified Diagnostic Radiologist since 1975, has held numerous teaching positions including, most recently, Professor Emeritus of Diagnostic Radiology from the University of California, Davis, School of Medicine, and has published more than 50 academic articles, including several related to the spine.[24] He has testified in a dozen arbitrations and trials in California.[25] The opinion he proposes to offer in this case is narrowly confined to his demonstrated expertise: what the films he reviewed show.[26] I find that Dr. Reid is qualified to give this narrow opinion.

Stedeford's argument that Dr. Reid's opinion is unreliable because he has not examined her or reviewed her other medical records also assumes a much broader scope of his opinion, one that has not been offered here. Stedeford has not shown or even suggested that a radiologist requires medical records or a physical exam to interpret images on radiological films—the narrow task that Dr. Reid performed in this case. To the extent that Stedeford and her experts believe that Dr. Reid's reading of the five films he reviewed could be more reliable if he had also examined Stedeford or her

---

[22] ECF No. 38.

[23] ECF No. 46-3 at 2.

[24] ECF No. 46-2.

[25] ECF No. 46-4.

[26] ECF No. 46-3 at 2 (summarized as "Only degenerative abnormalities are present in the reviewed studies, with no radiographic indication of an acute event preceding or following the cervical fusion.").

other medical records, that argument goes to weight, not admissibility, and her remedy is a vigorous cross examination, not exclusion.[27] Stedeford's motion to exclude or limit Dr. Reid's very narrow opinion is denied.

**Conclusion**

Accordingly, IT IS HEREBY ORDERED that:

- Plaintiff's Motion in Limine to strike the Opinion of Defendant's Expert Witness Steven McIntire, M.D. Regarding the Plaintiff's Surgery **[ECF No. 37], and**
- Plaintiff's Motion in Limine to Strike or Limit the Opinion of Defendant's Expert Witness Michael Reid, M.D. **[ECF No. 38],**

**are DENIED.** At trial, Wal-mart still must establish by a preponderance of the evidence that both witnesses' opinions are based on sound methodology before they may testify.[28]

Dated this 15th day of July, 2016

_____
Jennifer A. Dorsey
United States District Judge

---

[27] *Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."); *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) ("[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion."); *see also Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1231 (9th Cir. 1998) (the strength of an expert's testimony or faults in his methodology go to weight, not admissibility).

[28] *Lust*, 89 F.3d at 598; *Daubert II*, 43 F.3d at 1316.